Mr. Alvarado is advancing two claims here, the insufficiency of the evidence for the I'd like to say a few words about the insufficiency of the evidence, but really spend the bulk of my time on the IAC claim. As far as the insufficiency evidence, the district court said that Mr. Alvarado's claim that the evidence was constitutionally insufficient was persuasive. But because of AEDPA, the court couldn't quite see its way to granting the habeas petition. The district court was right as far as it went. This was not a murder case. And I understand what the insufficiency is. It's not the usual insufficiency that they didn't prove I did it. It's insufficiency to show that it was murder rather than manslaughter. Is that right? That's correct. And the all you have to do is read the state court's own decision of this case to realize that this is not a murder case. Why isn't that answered just by what the judge said that he brought a gun to a fistfight? Well, Your Honor, there's nothing wrong with arming yourself when you've been threatened your life. Somebody has threatened you to threaten to slice you up with a knife. Strikes me that that's a jury argument. Well, you bring a gun to what if you really think it's going to be a fistfight and here it's two smaller guys. You think you can beat him up, but you bring a gun. One inference would be that's just in case you needed to protect yourself from death or grievous bodily injury. And another possible inference is maybe they're thinking of a fistfight, but what you're thinking about is killing them. Well, Your Honor, that in that instance, it may well be a murder case, but that's not what the record shows in this case. The record shows in this case that when that at every step of the way, Mr. Alvarado declined to fight. Well, you also have motive that you have to kind of jump over to because there was Raina had had a one night stand with one of the deceased. Correct. Correct. And so that was part and parcel of the earlier incidents that were going on. So you've got a jury looking at, well, yeah, he's got a lot of reason to not like these guys. They're making fun of him. And one of them had an affair with his girlfriend. Well, Your Honor, by definition, in any case that's a self-defense case, there's going to be a motive to defend yourself. I mean, that's the whole that's the whole reason. That's not just a motive to defend. Some guy has sex with your girlfriend. It's a motive to take the initiative and hurt him. But if you read the record, the record shows that Mr. Alvarado declined to fight. He didn't want to fight. They arrived initially outside the apartment building. And Ozzie is the one is saying, hey, look, you want to fight? You want to know? I don't want to fight. I really don't want to have anything to do with this. And they turn to walk up the apartment and Ozzie throws a beer can at and hits and hits Raina in the back of the head and then says to him, now you're going to defend your girlfriend? Well, it just it seems like a lot of them are jury arguments because you could you could argue that he declined a fair fight. And then in the interim, he decided to get what was it a Mac 11 or something and then take that plus a baby to a fist fight. I mean, you have a good point. What about the baby? I mean, he says, I will only go out and talk to Ozzie if I'm holding a baby. See, these are all these are all great arguments. But apparently the jury didn't buy it. That's the whole thing. I mean, you know, I could argue this either way. And apparently they bought bought the other way. So that's that's a tough hill to climb on. Well, I appreciate the evidence. I appreciate that, Your Honor. However, if you if you read the evidence, I mean, this is not your standard murder case. You have a case where the prosecution's principal witness is Raina, the principal witness. And in the prosecution's case in chief, she has described a situation where the defendant has exited that building with a baby only to talk to Ozzie. That's all he wanted to do. And Ozzie's partner sneaks up behind him, pins his head against the wall. They both jump in. They both start beating him. They beat him to the ground. Well, you know, I just thought of one other thing that the jury could have considered, which could flow over, is he also then after he shot the guy that was down, they could look at the other incident as sort of a gratuitous shooting the guy that he wasn't dealing with face on and he hits him three times in the back. That probably didn't it probably didn't help his case. Well, I mean, we can parcel it out, but the jury gets all of that and they have to decide, you know, what what was the guy doing? And they have all of that to process. And they didn't go with you. The amount of time, the amount of time between shooting Ozzie and shooting Darwin was, according to Raina, four seconds. Now, this is between the time that the man is on the ground being kicked, being punched in the head and the stomach by two people stands up. He shoots one and four seconds later shoots the other. That is one that is one transaction. But, you know, on top of that, your honor, you look at the if you look at the application of Edmund's case, you look at the way the state court wrote the decision. And it was absolutely an unreasonable decision because they relied on facts that were both irrelevant and other facts that were simply incorrect. For example, they said that my client had time to cool off because he went home and got his gun. Well, that would be a fine argument if Mr. Alvarado had come back after it cooled off and walked up to Ozzie and shot him. That's not what happened. He came back. He declined to fight again. He came out with a baby and he was assaulted and beaten to the ground. And then he stood up. So there's those kinds of facts in the state court opinion that make it unreasonable. But I would like to pass on to the to the ineffective assistance of counsel claim, because that was really a principal claim in a district court. And it's I think no matter what your honors, how your honors characterize the case, whether it was a close case in self-defense, it maybe was a jury question. The the question in terms of IAC is whether the defense counsel did what he could to make that jury question come out in the defendant's favor. And we know here, based on a comparison of this case, for example, with other self-defense cases, people versus Minofi, which we talk about at some length. Actually, it's not quite the question. The question is whether he fell below the very minimal Strickland standard and if so, whether it prejudiced. Absolutely. Those are the two. And it seems to me there's problems saying that the state court is unreasonably applying Strickland on on those two branches. On both prongs. You're referring to both prongs. OK. The first the first prong he has to we have to show it's quite right is whether he fell below below the standard. Now, you have a defense case that a self-defense case that's relatively close and you have evidence that the victims had previously assaulted the defendant. I thought it was kind of vague whether there even was evidence that these particular victims had previously assaulted. Actually, it was not vague. Raina had testified. I'm sorry. Raina had given us. I had trouble seeing whether it mattered. I mean, suppose they had. And so what? It gives him more motive to kill them. Well, it may give them a motive. And again, I come back to my point that in a self-defense case, you've got a lot of motive. There's always a motive. However, in California, the law of California is and this is terribly important. If you have been previously assaulted or beaten by a person who ends up being the victim, you have the right under California law to act both more harshly and more quickly. And that's an instruction that's given to the jury. It is now for the longest time. It was not it was not a standard jury instruction. It has now been incorporated into the California standard jury instructions. It's you know, I really I agree with you on that. But where I'm struggling is when attorneys are if you know, if you've been a trial lawyer, you know that you struggle on tactical, a tactical basis when you're going to bring in anything that's extraneous. And anyone that's been you know, when the whole issue involves violence and then you start bringing other fights in, you have to you really have to look at that carefully to decide, is that going to put my client in another? You know, if I mean, you bring in these other fights and you bring in these other situations. And I think that you've got you've already have a little bit of the situation of, you know, gangsters, as it were, you know, what Norteño's or whatever, as far as that goes. And then you've got them dueling over other things and that one of them has, you know, is dissing them right before you've got an affair that one night stand going on. I mean, the attorney is dealing with a lot of tactical decisions there. Can we second guess that not to bring in other fights to responses? Your Honor, I've been trying since October 27th, 1998, to get Mr. Clark under oath to find out what the reason was for leaving out this important evidence. We don't know. The state court made up a reason which struck me. I don't know how it struck the court, but it struck me as fairly incredible the reason that they speculated why he did this. The district court basically followed suit. They speculated. I don't know why Mr. Clark did it. I wrote him a letter and he wouldn't respond to me. The attorney general doesn't know. And I beg the court to ask the attorney general the worst. Let's assume that it was in his file. And when he was actually doing his cross, he blew it. He blew it. He forgot. I actually never did a trial where I wasn't hitting myself afterwards for the things that I did wrong and that I forgot, including the ones that I won. Nor I an oral argument, Your Honor. And you'll give your best oral argument on the way home. Everybody does. Absolutely. That's just that's the way it is being a lawyer. Why wouldn't this fall within that? Because there's there's two reasons. The first is this was evidence that was absolutely central, critical to the self-defense. The most important thing you can say is that critical. It seems peripheral. I mean, what it is is about another another fight at another time that on the one hand could make them more afraid of these guys. On the other hand, could make them more hostile and interested in killing these guys. Well, but Your Honor, the the whole. It's not about this fight. The whole. But that's just the point. You cannot take a snapshot and say, look, you know, the whole thing started when one Alvarado walked out the door. That's you. You can't do that. I get it. It's something that it's a different fight. You could get it in. Probably are arguably the the the D.A. might try to keep it out and arguably he'd succeed. But probably you'd get it in. But then it seems ambivalent. I mean, I can see the prosecutor making an argument from it for vindictiveness and the defendant making an argument from it for greater fear of these guys. But Your Honor, my Mr. Alvarado, first of all, Mr. Alvarado was not a gang member. He was victimized by the Norteño gang. He had nothing. He wanted nothing to do with the gangs. And there was an entire course of conduct where he was beaten, where he was harassed, where his windows were broken. And the fact that it didn't come in allowed the prosecutor in his closing argument to make a statement like this. He says, you don't have any evidence that these kids, Ozzie and Darwin, had any bad contact with Mr. Alvarado in the past. You've heard innuendo. Mr. Clark said he could prove it, but he didn't. He didn't put on any evidence, period, that these two ever had anything to do with Mr. Alvarado. And that went on and on for another couple of pages about, you know, the promises defense counsel made that these guys were big, bad guys. And eventually he says, you know, they're not even gangsters. We can't even tell they're gangsters or whether they're just people wearing red belts. You know, the point is. They were wearing colors, right? I'm sorry? They were wearing colors? They were wearing red belts. Yes, they were Norteños. My client did not. I guess there was a perfectly good defense argument that they were wearing colors. Well, the fact that. Colors are kind of like a Hells Angels jacket, right? Maybe you just got it at the Salvation Army because you thought it looked cool, but probably not. If you're wearing the Hells Angels jacket, probably you made a new membership. Reina said that Ozzie was a Norteño, but but because of defense counsel's incompetence, the jury never heard that Mr. Alvarado had been harassed. And my point is the defense lawyer could suggest to the jury that they draw the inference from the colors. They could you could say he's wearing a red belt and but without any of the prior harassment, I mean, it's it's kind of like big deal. OK, so he's wearing a red belt. But the fact that he's wearing a red belt and he's a member of a gang. I've never seen a red belt. You've never seen a red belt? I've been on Seaside. I don't know what they've got in Alaska. It's very distinctive. Red and blue, both your honor. The blue on one side, red on the other. But Mr. Alvarado wasn't wearing a colored belt because he was not a gang member. But the point is, is that in order to give the entire picture of this transaction, so you have to get inside Mr. Alvarado's mind. That's self-defense. What did he reasonably believe? What are the appearances that he can rely upon? And he's entitled to draw on his whole breadth of experience with these thugs. And he was. That's what that I mean, that's how we got to this situation. And by saying that, well, it wouldn't have been a big deal for, you know, if he didn't talk about this. Refresh my memory. Did he testify? No, he did not. You know, what's the big deal? What's to be gained from it? Well, first of all, you stop the prosecutor from making statements and closing arguments like that. And secondly, you have explained to the jury why Mr. Alvarado reacted the way he did, why he was entitled to react that way. I mean, there was an incident that Raina could have testified to. And also in the Padilla defense, the investigators report where Mr. Alvarado was attacked and being with a baseball bat. I mean, come on. I mean, this is important stuff when you're putting on a self-defense case and it didn't come in and we don't know why it came in. I agree with Your Honor. It would be really it would be lovely to know why Mr. Clark did not put this evidence in. But we don't know. All we have is speculation. And that's why we need an evidentiary hearing in this case. And that's all we're asking for, an evidentiary hearing. Put on Mr. Clark. Why didn't you put this evidence in in your file from your from Mr. Puskarek, the statement of the DA's investigator, from his own investigator, from Raina? Why didn't you put that in and give the jury a theory and then get your antecedent threat instruction, which tells the jury, hey, Mr. Alvarado is entitled to act quickly and more harshly because he has been harassed and beaten in the past by these people. And in my view, Your Honor, that was absolutely inexcusable. And could it have made a difference? The state says in its in its brief at page 44, they say, I guess if the lawyer says I forgot, then you've got an argument. And if he says I was afraid it would support a claim of vindictiveness, make him look like a Bernard Getz who was looking for an opportunity. Let's hear what he has to say. You're out of business, right? Let's let's hear what he has to say. The state says at page 44 brief, at most, the evidence would have established that Ozzie and Darwin had previously beaten defendant. Well, yeah, as my daughter would say, yeah, that's what it would have established. And then we get the instruction and then the jury gets to hear the whole scenario. Uh, I'll reserve, balance my time. Thank you. Jeff Lawrence for the state of California. Um, I'd just like to, you know, the overarching theme that in both counts and on well aware, um, I'll just respond briefly to the IAC claims. Um, and purely the last point made the antecedent threats. And I would like to point out that under state law, an antecedent threats instruction is only available if the prior encounter involved a actual infliction of great bodily injury or death or a threat of great bodily injury or death. And as I pointed out, the mere fact that he had suffered a prior beating does not establish great bodily injury or death. Rain a statement. Was there something about baseball bats? No. Uh, the base, uh, rain, I did not give a statement to the police about baseball bats as far as, uh, I can't speak specifically. I don't recall, but I, I believe that reference was to the subsequent interview with rain where she recounted additional information that she had withheld from defense counsel at trial. Defense counsel had no information regarding baseball bats that wouldn't have come in a trial now on prior beating, um, a prior beating by more than one person isn't enough to get an instruction. There has to be great bodily injury or a threat of great bodily injury or death. The reason I asked you a question is I was thinking if two guys are beating on one, does that present the threat of great bodily injury? No, not, not, uh, not on its face, not by itself. You would need additional evidence, which there isn't any in this record. Um, going through the IAC claim, uh, counsel wants an evidentiary hearing in order to be able to ask defense counsel, trial counsel, what his reason was. The simple answer is that Strickland is an objective standard. At this stage, we don't care what his reason is. When the state court and the federal court can identify reasonable decisions or decisions that a reasonable attorney would have made not to pursue this evidence, that's sufficient. Strickland is satisfied. Counsel essentially wants to engage in a fishing expedition to find out why, but at this stage, it doesn't matter why we don't need to know whether or not he had a decision, a tactical decision was based on the exact reasons stated by the state court or the federal court, uh, the district court, um, or had no reason at all. He knew the evidence, he knew the material in his records, he knew the state of the law, uh, and his decision fell within a reasonable grounds, within reasonably competent tactical decisions. That's all we need to know. Um, that's why it was the state court's ruling was not an unreasonable application of Strickland. Um, in terms of, uh, the sufficiency of the evidence, I think the court has fully addressed the nature of this claim. All of counsel's arguments are directed toward a jury, not toward a deferential review at this stage. Uh, unless the court has any questions, I'm prepared to submit it. Thank you, counsel. Baseball bat, Your Honor. Um, after Mr. Alvarado was arrested, he was interrogated by the police. Uh, there was a transcript made of that. At page 32 of the transcript, Mr. Alvarado describes that the first time he was, he was beaten three times by these individuals. The first time he's, he has a, he has a translator. So the translator is paraphrasing the first time you said they hit you with a bat or something like that. Did you get examined by hospital, go to the doctor, uh, that sort of thing. Um, he was beaten by a bat defense counsel knew it. Um, Martin Andrade, another witness at the trial testified that he came out of his house one day and saw Mr. Alvarado being set upon by three or four people who claimed he could testify to that. But what evidence was there that Raina could testify to that Raina because you're, because, because Mr. Alvarado didn't testify so that, you know, that, so then it's got to be other people that would be able to say that. Correct. And Raina told the district attorney's investigator that Juan had told her that he had been beaten by the Norteños and by Ozzie and Darwin and by the Norteños. And was afraid of them. That was in Mr. Piskarek's report. That's the DA investigator. That was in counsel's file. But there was something she didn't tell until after what was that additional details. Correct. Because she had been threatened by the gang. She said she purposely didn't say them. Correct. But that report, that statement that she had been, that they'd been previously beaten by Ozzie and Darwin and been harassed was, uh, was in counsel's file. Secondly, uh, there was a statements, a whole bunch of statements from relatives of the defendant that the district, that the public defenders, uh, investigator got from relatives. One was identified as Cucco, Refugio Cucco, uh, the same person. And if you take a look at that. Is there evidence in the trial that, that Raina was a Norteño? Raina was in fact, joined the Norteños at about age 13 and she wanted out. Um, but she, she knew what they were capable of. Yes. And the baby was her baby with Alvarado? It, it's not clear whether it was Mr. Alvarado's baby. It's not in the record. It's not clear. She was, it's, it's clear that it's Raina's baby. Absolutely. It was Raina's baby. And that Raina's a Norteño. And Raina, Raina was also a gang member. Um, what do you say about the, uh, point made by opposing counsel that, uh, it requires beating, it takes a great bodily harm or the like? Uh, Your Honor, I would say that that would have been relatively easy to establish in this case. Um, there was the baseball bat incident. There was the incident I was referring to with Mr. Andrade when he was coming out of the house and he, uh, the defendant was being beaten and he had blood streaming down his head. Um, you put that together with the threats of death on this night, on this night alone, where they said, we're going to slice you up. Raina said he had a knife. She called the police. She was hysterical. There was a 9-1-1 tape, uh, in which she said there's gang members out there. They're threatening to break into my house, break the windows, that sort of thing. There was ample evidence that these people, uh, had, had threatened great up bodily injury against Mr. Alvarado. Um, Your Honors, I would recommend in terms of the, the impact that this could have had on the case, I strongly recommend that you take a look at People v. Menifee, the California Supreme Court case involving a very similar situation, but a far less explosive situation, uh, where the court reversed a murder conviction for this very reason, because there were antecedent threats from the victim's gang that didn't get in the record. Our case is much stronger than Menifee. Um, in the end, Your Honors, I would say that the right to defend oneself is... But wasn't it, just to clarify on Menifee, wasn't it the court didn't let the threats in? It wasn't that defense counsel made a decision not to let them in. Isn't that correct? That's correct. Same, same effect. The jury didn't hear it. Except for, that takes out the prong that there could be other reasons that defense counsel wouldn't want to do it. But I mean, in Menifee, it was said when Crawford and defense counsel chose to enter them in, it was error not to allow them. When I say, when I'm, I'm asking the court to take a look at Menifee, I'm, I was referring to the prejudice prong. Would it have made a difference? And you know, how, why the jury didn't hear the evidence is really not, not critical to that inquiry. Now, if you go back and say, you know, but that doesn't address the fact that the jury, you know, why didn't the jury hear this information? Absolutely. Let's hear why. I don't see how the defense lawyer could have made a good case for the he'd needed to establish without the defendant testifying. It seems to me the girlfriend wouldn't be an eyewitness to most of it. Um, there wouldn't be eyewitnesses except uncooperative gang members. It's sort of hard to do unless you can put the defendant on and get the jury to believe him. Well, your Honor, the defendant's mental state, first of all, contrary to the attorney general's position, does not have to be proven by putting the defendant on the stand. We know that that violates Brooks versus Tennessee. You can't require that. I'm not talking about what's required as a matter of law. I'm talking about, did the lawyer make some mistake that was prejudicial here? And I'm thinking, uh, nothing really mattered without Alvarado testifying. You couldn't get eyewitnesses to his beatings and you couldn't get, um, an explanation that the reason he carried a gun is fear of great bodily injury without Alvarado saying so. Uh, I, I beg to differ with the court on that. Um, we had, we had Martin Andrade, as I said, who came out and saw him being beaten by Nortenos who ran away yelling the real Nortenos. Uh, we have, um, the, uh, evidence of Mr. Frank Fuentes, who was, um, uh, the employer who had came, uh, uh, Alvarado's employer, he came to work, he was beaten up so badly Fuentes sent him home. He said he was having trouble with, uh, with the South side, uh, Nortenos. Um, we have the family members who all could have testified that his car window had been broken and that he was forced to move because of this. So there was a lot of circumstantial evidence in addition to Raina's own testimony, uh, the other evidence. I'm sorry. Did the lawyer defense lawyer put in that other evidence that you just described? It did not, Your Honor. He attempted to put in, he attempted to put in, um, uh, the, some of the Andrade testimony, but he was stopped because he was unable to take the evidence out of his own file and connect it up. That's all he had to do. All he had to do is say to Raina, one question, did Mr. Alvarado ever tell you he was afraid of the Nortenos? Did Mr. Alvarado ever tell you he had been beaten by the defendant? Answer to yes to both questions, all this stuff comes in. Why wouldn't it be hearsay? Because it goes to Mr. Alvarado's state of mind. It's not for the truth of the matter asserted. It goes. No, it is for the truth. No, it is for the truth. But she says, he says he's afraid. And why isn't the prosecutor allowed to cross examine him on whether he really was afraid? Well, because it goes to his state of mind and the California court of appeal. About his state of mind. When we, we have to prove the state of mind, but the California court of appeal has spoken on this. They said it was admissible. It's in the state court decision that, I mean, we had this argument about hearsay and the state court of appeal, and they said, absolutely. This is admissible to prove state of mind, which is why you can have circumstantial evidence. That's funny. It seems like he's, he's trying to prove for the truth of the matter asserted something that he said out of court without subjecting himself to cross, but it is an exception. It's a well-established exception to the hearsay rule to prove the defendant's state of mind. You can have a, you know, this can prove his state of mind as opposed to the defendant made. Yeah, it's, I mean, sure. The prosecutor can get it. Absolutely. And I, I refer the court to the state. I mean, we're talking about taking state, state laws as the state court says it. That's, that's the basis for the writ as they said, this was admissible to prove that. Okay. Um, I, I mean, there's lots of examples where that comes up in a, um, battered women's syndrome, that sort of thing without the defendant testifying other people, uh, you know, for example, there's the, the DePetris case in this, in this court where the woman's diary came in, where she said, I was terribly afraid of the, the, uh, victim who she eventually shot. It's that sort of thing. It's a standard recollection recorded, but thank you. Thank you, Your Honor. Alvarado versus small is submitted. Prime guard insurance versus low is submitted and we are adjourned.
judges: Oakes , Kleinfeld, Callahan